**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CLARENCE Z. HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-CV-233 HEA |
| | ) | |
| ANNE PRECYTHE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff Clarence Z. Howard, an inmate at Missouri Eastern Correctional Center (MECC), for leave to commence this civil action without prepayment of the required filing fee. Having reviewed the motion and the financial information submitted in support, the Court has determined to grant the motion, and assess an initial partial filing fee of $ 25.29. *See* 28 U.S.C. § 1915(b)(1).  Additionally, after reviewing the allegations in plaintiff's complaint, the Court will dismiss this action pursuant to 28 U.S.C. § 1915(e)(2)(B).

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee.  If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period.  After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.  28 U.S.C. § 1915(b)(2).  The agency having custody of the prisoner will forward these monthly payments to

the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of the instant motion, plaintiff submitted an inmate account statement showing an average monthly deposit of $126.43. The Court will therefore assess an initial partial filing fee of $25.29, which is twenty percent of plaintiff's average monthly deposit.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even pro se complaints must allege facts

2

which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).  Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff, an inmate at MECC, brings this action pursuant to 42 U.S.C. § 1983 alleging violation of his civil rights. He names the following individuals as defendants in this action:  Anne Precythe (Director, Missouri Department of Corrections (MODOC)); Alana Boyles (Division Director, MODOC); Jeff Norman (Division Director, MODOC); Richard Adams, Warden; Lieutenant Unknown Sparks; Lieutenant Unknown Word; Sergeant Unknown Njoku; Sergeant Unknown Wisdom; Unknown Gore; Unknown Wilford; Unknown Litton; Unknown Dee; Diane Sommerly; Captain Unknown Borgender;  All High Official Assistant Wardens/Deputy Wardens; and Sergeant Unknown Hankiel. Plaintiff sues defendants in their individual and official capacities.

Plaintiff's handwriting is almost entirely illegible. He writes on notebook paper almost entirely, and in ballpoint pen. The Court will do its best to read the allegations in the complaint.

Plaintiff appears to be alleging that his due process rights were violated when he was sent to disciplinary segregation in December of 2019, and guards told him that some of his property had been lost during his transfer.[1] Plaintiff asserts that because some of his property did not transfer with him, he was unable to shower for eight days during his time in disciplinary segregation. It does not appear that he was not offered a shower. Rather, it appears that his loss of property

---

[1] At various places in the complaint and IRRs attached to the complaint plaintiff has different stories regarding the loss of property. He states guards told him his personal property was lost during the move to administrative segregation. However, he also states that some unnamed guards told him that his personal property was being withheld.

necessitated him being unable to take a shower because he lacked hygiene items. Plaintiff believes this loss of property not only violated his due process rights, but also his equal protection rights.

Plaintiff asserts that because he did not have his hygiene items (personal property was lost) during his eight days in disciplinary segregation, he started to get sores on his arms. He admits that medical provided him with a cream to treat the sores, but he still asserts that his property should not have been lost by unnamed persons at the prison. Plaintiff does not indicate who exactly lost his property or why he was not able to shower in disciplinary segregation or why his hygiene items were not replaced during his time in disciplinary segregation.

Plaintiff asserts that he is seeking thirty million dollars in damages in this action for the careless acts of the Missouri Department of Corrections.

Simultaneously with his complaint, plaintiff has filed a motion for temporary restraining order and a motion for preliminary injunction. In his motions for injunctive relief plaintiff requests that the Court enter a mandatory injunction ensuring that defendants don't "harass plaintiff" or "destroy" his property or legal mail or engage in retaliation of plaintiff due to the filing of this action.

**Discussion**

After review of the complaint in its entirety, the Court finds that this action is subject to dismissal.

### A. Plaintiff's Request for Extension of Time/Stay to Exhaust His Administrative Remedies

Plaintiff filed a motion on March 26, 2021 seeking an extension of time in this matter, indicating that defendants claimed they had resolved the matters at issue in this action; however, plaintiff believed differently. Plaintiff sought time to pursue a grievance appeal.

4

On May 12, 2021, plaintiff filed a motion seeking an extension of time, stating that a "MDOC official was denying the next stage of exhausting remedys [sic]." Plaintiff, however, did not provide any information relative to his conclusory statement that he was being denied from the next stage of his administrative grievance procedure. Additionally, plaintiff stated that he was seeking time to pursue additional administrative remedies.

On May 24, 2021, plaintiff filed a motion seeking an extension of time to pursue his temporary restraining order and preliminary injunction. Plaintiff indicated he was still pursuing his administrative remedies at the prison.

Pursuant to the Prison Litigation Reform Act (PLRA), a prisoner may not bring an action under section 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of the PLRA's exhaustion requirement is to afford corrections officials "the time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002)).

"Exhaustion" under section 1997e(a) means "using all steps that the agency holds out and doing so properly (so that the agency addresses the issues on the merits)." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (emphasis in original). An inmate exhausts his administrative remedies by pursuing "the prison grievance process to its final stage" to "an adverse decision on the merits." *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (quoting *Hammett*, 681 F.3d at 947-48)). The level of detail necessary to comply with grievance procedures "will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

5

As plaintiff has admitted that he has not exhausted his administrative remedies at the prison, the Court is unable to grant him an extension of time to do so. Moreover, as noted above, full exhaustion of administrative remedies is a prerequisite to filing suit as a result of the Prison Litigation Reform Act.

Plaintiff is required to exhaust all administrative remedies prior to filing suit in this Court, unless he is blocked from doing so by defendants. Plaintiff has not indicated that he is blocked from filing his administrative procedures or that exhausting his procedures is futile. For these reasons, the Court must decline to grant plaintiff's motions for extension of time. Furthermore, plaintiff's admittance that he has failed to exhaust his administrative remedies is fatal to the present lawsuit. This action is subject to dismissal on this basis.

Even if plaintiff's claims were not subject to dismissal for failure to exhaust, his claims would be subject to dismissal for a myriad of other reasons.

## B.  Official Capacity Claims

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (internal citation omitted).  Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson*, 172 F.3d at 535.  Here, defendants are all employees of the Missouri Department of Corrections ("MDOC").  Naming a state official in his or her official capacity is the equivalent of naming the government entity that employs the official – the State itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008).  However, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will,* 491 U.S. at 71.

6

In addition, in the absence of a waiver, the Eleventh Amendment[2] bars a § 1983 suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998). Accordingly, to the extent plaintiff seeks monetary damages against the defendants, his official-capacity claims are barred by the Eleventh Amendment and should be dismissed. *Andrus ex rel. Andrus v. Ark.*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment.").

Plaintiff's individual capacity claims also fail to state a claim for relief.

**C. Individual Capacity Claims**

First, the complaint fails to adequately allege facts showing how each named defendant was personally aware of and disregarded a substantial risk to plaintiff's health or safety. For example, he has not indicated who purportedly lost his property or who denied him showers during the alleged time period he was in administrative segregation. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990), *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff). Plaintiff cannot hold the defendants liable simply because they held supervisory or administrative positions. *See Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (claims sounding in respondeat superior are not cognizable under § 1983). He has not indicated how any of the alleged defendants failed to deprive him of his constitutional rights.

---

[2] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI.

Additionally, plaintiff has failed to state a claim for a denial of his property under the due process clause. "When a state employee's unauthorized, random acts deprive a person of property, the state employee's acts do not violate the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Clark v. Kansas City Missouri Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004). Missouri provides such an adequate post-deprivation remedy. *See Orebaugh v. Caspari*, 910 F.2d 526, 527 (8th Cir. 1990). Specifically, an individual claiming the right to possession of personal property may bring an action in replevin. Mo. R. Civ. P. 99.01. *See also Allen v. City of Kinloch*, 763 F.2d 335, 337 (8th Cir. 1985) (stating that plaintiff seeking return of personal property under 42 U.S.C. § 1983 failed to establish any violation of his constitutional rights because he could obtain adequate relief by filing a replevin action under Missouri law).

Here, plaintiff alleges that his personal property was taken from him during his time in disciplinary segregation for a period of eight days. Although plaintiff does not state who took the property, the law is clear that such deprivation of personal property in prison does not amount to a constitutional violation if a meaningful post-deprivation remedy is available. In Missouri, such a remedy is available by filing an action in replevin. Therefore, plaintiff's deprivation of property claim must be dismissed for failure to state a claim.

Additionally, even if plaintiff is attempting to assert that his due process rights were violated simply by his placement in disciplinary segregation, he has failed to state a claim upon which relief may be granted. In the administrative segregation context, the determination of whether prison officials denied an inmate due process involves a two-step inquiry. *Williams v. Hobbs*, 662 F.3d 994, 1000 (8th Cir. 2011). First, a plaintiff must demonstrate that he or she was deprived of life, liberty, or property by government action. *Phillips v. Norris*, 320 F.3d 844, 846

(8th Cir. 2003); *see also Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012) (stating that a court "need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest").  Once it has been established that a liberty interest exists, the process necessary to protect that interest must be determined.  *Williams*, 662 F.3d at 1000.

 As life or property is not at issue in this case, plaintiff must identify a liberty interest to sustain his due process claim.  *See Phillips*, 320 F.3d at 847.  The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  So to assert a due process violation based on a liberty interest of avoiding administrative segregation, "an inmate must show that the segregation created an atypical and significant hardship on him in relation to the ordinary incidents of prison life to demonstrate that his liberty interest was curtailed."  *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002) (internal quotations omitted).

The Eighth Circuit has stated that an assignment to disciplinary or administrative segregation is not, in itself, an atypical and significant hardship.  *See Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (stating that Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*"); *Kennedy v. Blankenship*, 100 F.3d 640, 642 (8th Cir. 1996) (stating that plaintiff's "demotion from administrative segregation to punitive isolation is not the sort of deprivation that qualifies as atypical and significant"); *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996) (stating that plaintiff "has no liberty interest in avoiding administrative segregation unless the conditions of his confinement present the type of atypical, significant deprivation in which a state might conceivably

create a liberty interest"). This is so even if the demotion to segregation is without cause. *Phillips*, 320 F.3d at 847.

Although plaintiff has asserted that he went without a shower for eight days in disciplinary segregation, he has not alleged that this was any different than what occurred in general population. Moreover, the only harm plaintiff alleges as a result of a denial of property – a delay in taking a shower – does not state a constitutional violation. *See Scott v. Carpenter*, 24 Fed. Appx. 645, 647-48 (8th Cir. 2001) (finding no denial of "minimal civilized measure of life's necessities" when prisoner was able to shower only fifteen times in six months including a twenty-eight-day period without a shower).

Plaintiff has also failed to allege an equal protection violation. The Equal Protection Clause provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The purpose of the equal protection clause . . . is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sunday Lake Iron Co. v. Wakefield Twp.*, 247 U.S. 350, 352 (1918). Unequal treatment of "those who are entitled to be treated alike[] is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." *Batra v. Bd. of Regents of Univ. of Neb.*, 79 F.3d 717, 721 (8th Cir. 1996) (*quoting Snowden v. Hughes*, 321 U.S. 1, 8 (1944)). "The good faith of [state] officers and the validity of their actions are presumed; when assailed, the burden of proof is upon the complaining party." *Sunday Lake*, 247 U.S. at 353 (citations omitted). Plaintiff's allegations must show purposeful discrimination – it is not enough for plaintiff to characterize an official's decision as "unequal." *Snowden*, 321 U.S. at 10.

Plaintiff does not provide a legal basis or any argument in support of his equal protection claim. The Court can only surmise that plaintiff is making a "class of one" equal protection claim, as in his IRRs attached to the complaint, he asserts that the inmate he fought with was allowed some personal property when he was placed in administrative segregation.

The Supreme Court recognizes a "class of one" equal protection claim "where the plaintiff [does] not allege membership in a class or group," but instead "plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *accord Barstad v. Murray Cty.*, 420 F.3d 880, 884 (8th Cir. 2005). "Identifying the disparity in treatment is especially important in class-of-one cases." *Barstad*, 420 F.3d at 884.

Here, plaintiff's equal protection claim fails because the allegations of the complaint do not establish that plaintiff and the other inmate were similarly situated or that plaintiff was intentionally treated differently than others in administrative segregation. Plaintiff has not demonstrated that he and another inmate in administrative segregation are "entitled to be treated alike" or that they are "similarly situated" in relation to the resolution of their conduct violations, i.e., the Court knows nothing about the other inmate's prior conduct before he was placed in administrative segregation. Additionally, at various places in the complaint, plaintiff asserts that his personal property was "lost" rather than withheld when he was moved to administrative segregation. Also, nothing in the complaint indicates intentional or purposeful discrimination on the part of the defendants. For these reasons, plaintiff's complaint fails to state individual-capacity claims against defendants for equal protection violations.

### D.  Medical Claims

Plaintiff asserts that as a result of not showering he started to get sores on his arms. He indicates that the sores were treated with cream provided to him by medical, but he insists the sores were caused by not showering because he was scratching his arms. Plaintiff does not indicate how he got the cream for his arms, but he admits it came from medical. However, he does not assert that he was denied medical attention at any point in time during his stay in administrative segregation. For these reasons, the Court cannot say that defendants were deliberately indifferent to his serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

### E.  Motions for Injunctive Relief

Plaintiff has filed two motions for injunctive relief in this matter: a motion for temporary restraining order and a motion for preliminary injunction. Plaintiff has also filed a motion for extension of the temporary restraining order and preliminary injunction, stating "defendants not complying with court order."[3] In plaintiff's motions for injunctive relief, he seeks to have Missouri Department of Corrections officials restrained from interfering with his legal mail, and additionally restrained from "harassing plaintiff" or destroying his property, or retaliating against him as a result of bringing the instant lawsuit. Plaintiff also requests that Missouri Department of Corrections officials be restrained from physically hurting him or placing him in the "hole" or making him go without showers.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 557 U.S. 7, 27 (2008). In determining whether to grant a preliminary injunction, a district court applies "a flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other

---

[3]The Court has not issued an injunctive relief order in this matter. Therefore, plaintiff's motion will be denied as moot.

interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015). *See also Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).

In the prison context, a request for injunctive relief must always be viewed with great caution because "judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995). For an injunction to issue, "a right must be violated," and the court must determine whether "a cognizable danger of future violation exists." *Id*. at 521. Furthermore, the "danger must be more than a mere possibility." *Id*. Regarding the issue of whether a situation is ripe for injunctive relief, the Eighth Circuit has noted that courts "should not get involved unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate." *Id*. Plaintiff has the burden of proving that an injunction should be issued. *See Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019).

The relief requested by plaintiff is unrelated to the substance of plaintiff's complaint, i.e., his request for prospective injunctive relief relating to retaliation, stopping future harassment, physical abuse, interference with his mail, placing him in the hole in the future, or placing him in administrative segregation if he gets a conduct violation. The Court is unable to grant a motion for injunctive relief that is unrelated to the substance of the claims in plaintiff's complaint. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (explaining that "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint"); and *Hale v. Wood*, 89 F.3d 840, 1996 WL 341206, at *1 (8th Cir. 1996) (unpublished opinion) (rejecting plaintiff's request for injunctive

relief because he "failed to establish a connection between these injuries and the conduct he challenged in his complaint").

Plaintiff has not indicated that he is suffering harm at the present time relating to the claims in his complaint as set forth above. Rather, his complaint discusses past harm that occurred during an eight-day period of December of 2019. Plaintiff's motion for injunctive relief discusses anticipatory retaliation that plaintiff believes could happen as a result of him filing the instant lawsuit. The Court cannot issue an injunction based on anticipatory harm. As such, plaintiff's request for injunctive relief must be denied.

**F.  Motion for Appointment of Counsel**

Plaintiff has filed a motion for appointment of counsel. Because the Court is dismissing plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2)(B), his motion for appointment of counsel will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $25.29 within **thirty (30) days** of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [Doc. #4] is **DENIED at this time.**

14

**IT IS FURTHER ORDERED** that plaintiff's motion for temporary restraining order and for preliminary injunction [Doc. #5 and #6] are **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff's motions for extension of time to exhaust his administrative remedies [Docs. #8, #9 and #10] are **DENIED.**

A separate Order of Dismissal shall accompany this Memorandum and Order.

Dated this 27th day of May, 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE